## AMARIAH TAFT *versus* OBADIAH WOOD *et al.*

The *St.* 1823, *c.* 138, § 5, providing that assessors shall be responsible only for the want of integrity and fidelity, in the assessment of taxes upon the inhabitants of any "city, town, district, parish or religious society," does not apply to the assessment of a tax on the inhabitants of a school district. [Altered by Revised Stat. *c.* 7, § 44.]

By *St.* 1826, *c.* 143, § 11, assessors are required to assess, *in the same manner as town taxes are assessed,* on the polls and estates of the inhabitants of school districts, all moneys voted to be raised by the inhabitants of such districts, for the erection of schoolhouses, &c.; and by the tax act, *St.* 1828, *c.* 143, § 3, they were required, in assessing taxes, to assess one sixth part of the whole sum to be raised on the male polls, as nearly as could be conveniently done, provided that the whole amount of poll taxes assessed in any one year on any individual, for any city, town and county purposes, highway taxes excepted, should not exceed the sum of $ 1·50. It was *held,* that this limitation of the poll tax to $ 1·50 did not apply in the case of the assessment of a school district tax made by virtue of these statutes, a school district tax being in its nature occasional, and not annual. [See Revised Stat. *c.* 7, § 27, and *c.* 23, § 37.]

The *St.* 1826, *c.* 143, § 11, [Revised Stat. *c.* 23, § 35,] requires assessors, before assessing any school district tax, to determine in which district the lands of persons residing out of the limits of the town shall be taxed, and to certify in writing their determination to the clerk of the town, who is to record the same; and where a school district tax was assessed, and the assessors neglected to comply with these provisions, it was *held,* that the assessment was invalid; and that an inhabitant of the district might avail himself of such defect.

THIS was trespass, for an arrest of the plaintiff by a collector of taxes, under a warrant, issued by the defendants, for the collection of a school district tax in Mendon.

The defendants pleaded the general issue, and filed a brief statement of the special matter of their defence, in which they justified as assessors of the town of Mendon.

At the trial, before *Morton* J., it appeared, that the plaintiff was an inhabitant of the school district, and liable to be taxed there; that the clerk of the district, on October 29, 1829, certified to the defendants, that at a legal meeting of the inhabitants thereof on December 14, 1827, it was voted to raise the sum of $ 800, and to cause the same to be assessed and collected, for the purpose of building a schoolhouse; that this sum was assessed upon the polls and estates in the district by the defendants; that the tax bills and warrant, for the collection of the same, were committed to the collector; that the plaintiff was assessed the sum of $ 25·57; and that he was arrested by the collector for the non-payment of the tax.

The plaintiff objected, that the polls in the district were as- sessed $1·87 each, whereas the *St.* 1828, *c.* 143, § 3, provides that the poll tax shall not exceed $1·50. It appeared, that the sum assessed upon the polls, in the present instance, did not exceed one sixth part of the whole sum to be raised, and that if the poll tax had been reduced to $1·50, the amount of the plaintiff's tax, being principally assessed upon property, would have been increased. The objection was overruled.

The plaintiff further objected to the validity of the assess ment by the defendants, because it did not appear, that the assessors had determined and certified in writing their determination to the town clerk, or caused the same to be recorded in the town clerk's office, in what school districts in the town, the lands of persons residing without the limits of the town, respectively, should be taxed, before they proceeded to assess the tax. For the purposes of the trial, this objection was overruled.

The defendants contended, that by *St.* 1823, *c.* 138, they were responsible only for their integrity and fidelity in the assessment of the tax. This point was also overruled, for the purposes of the trial.

It was proved, that a certain lot of land, with the buildings thereon, situated within the limits of the district, which was owned by a non-resident, but occupied by an inhabitant of the district, was not assessed. It also appeared that other lands belonging to non-residents were included in the assessment.

Several other objections were made to the regularity and validity of the proceedings of the school district in the election of the clerk and in voting the money assessed, &c., which it is not necessary to state.

The jury, under the direction of the court, returned a verdict against the defendants, for the sum of $33·75, subject to the opinion of the whole Court, upon the questions raised by the parties in the course of the trial.

*Davis* and *Washburn*, for the plaintiff, cited to the point, that the assessors were liable in this action, *Little* v. *Merrill*, 10 Pick. 543 ; that the proceedings of assessors are to be construed with strictness, *Libby* v. *Burnham*, 15 Mass. R. 148 ; that the assessment was invalid, because it did not ap-

*Taft*
*v.*
*Wood.*

*Oct 1st*

pear, that the assessors, before they assessed the tax, had determined in what school districts the lands of non-resident owners should be taxed, and certified their determination to the town clerk, *Thurston* v. *Little*, 3 Mass. R. 432 ; that the provision of *St.* 1823, *c.* 138, § 5, was not applicable to this assessment, *Little* v. *Merrill*, 10 Pick. 543.

*Merrick* and *W. S. Hastings*, for the defendants, cited to the point, that the omission to tax land of a non-resident did not vitiate the assessment, *Dillingham* v. *Snow*, 5 Mass. R. 547 ; *Inglee* v. *Bosworth*, 5 Pick. 498.

SHAW C. J. delivered the opinion of the Court. It is much to be regretted that in a matter so vitally affecting the interests of the community, in one of its very important concerns, so many questions and subjects of litigation, should arise. But since it has been the policy of the commonwealth to divide the towns into school districts, various powers have from time to time been conferred upon these districts by statute, until they have become, to some extent, legal corporations. Still, having acquired this character, slowly and by successive enactments, not in terms making them corporations, but investing them with powers, which, by implication, clothe them with the attributes of incorporation, they remain corporations of a very anomalous character, to which it is difficult to apply the rules of law, which regulate corporations generally. They are extremely limited in their powers, being confined solely to the object of erecting and furnishing school houses, or otherwise providing places for schools. They are still more limited in their power of action, being dependent upon the officers of their towns, for their original means of organization, and also for carrying their measures into effect. The consequence of this anomalous character is, that the correctness of their proceedings depends upon a strict compliance with a series of statute regulations ; and it requires but little experience to be convinced how difficult it is, in establishing a new system, to provide by statute a series of rules, so comprehensive as to meet all the contingencies which may arise in carrying it into execution, and so plain and practical in their directions, as not to be overlooked or misconstrued by the multitude of persons, who are called to act under them. But

these are evils incident to a new system, and a very useful one, which time and experience will gradually correct; and perhaps even now, with the experience already acquired, it might be useful for the legislature, to revise the whole system of the organization and action of school districts, and by a well digested series of practical regulations, drawn up with the best aids which experience, care and practical sagacity, can furnish, so to mould their organization and direct their proceedings, as to remove much of the uncertainty and doubt, and close up many of the sources of controversy and litigation, which now exist.

Upon the trial of this cause several questions were reserved for the consideration of the Court, which have been argued by counsel.

It was contended, that an action of trespass will not lie, since the *St.* 1823, *c.* 138, § 5, which renders assessors liable only for their integrity and fidelity, in assessing a tax upon the inhabitants of any city, town, district or parish, of which they are assessors, when thereto required by the constituted authorities thereof.

The construction of this section of the statute underwent a full consideration in the case of *Little* v. *Merrill*, 10 Pick. 546 ; and it was there held, that this statute does not apply to the case of an assessment made by assessors of a town, upon the inhabitants of a school district. That case, of which the grounds are fully stated in the report, is decisive of the present question. The case not being within the exemption created by the statute, it must be governed by the long and uniform course of decisions in this commonwealth, holding assessors liable in an action of trespass, where a tax has been illegally assessed, and where, by force of the assessors' warrant, the person of the party has been arrested, or his property seized. Whatever may be the supposed hardship upon these officers, we consider the law upon this subject to be perfectly well settled.

One objection to the proceedings of the defendants, of considerable practical importance, which was strongly pressed upon the attention of the Court, seems to be effectually removed by a careful comparison of the statutes. The objection

31 *

is, that the plaintiff was assessed $1·87, for a poll tax, whereas, by law, he could only be assessed to the amount of $1·50, in a single poll tax.

By the statute under which this assessment was made, *St.* 1826, *c.* 143, § 11, the assessors are required to assess *in the same manner*, as town taxes are assessed, on the polls and estates of the inhabitants &c., and on the lands &c., all moneys voted &c. for the purposes aforesaid. By *St.* 1828, *c.* 143, § 3, being the last general tax act, which had passed before the tax in question was assessed, and which at the time regulated the assessment of town taxes, the assessors were required to assess one sixth part of the whole sum to be raised, on the male polls, as nearly as could be conveniently done, with a proviso, that the whole amount of poll taxes, assessed in any one year, on any individual, for any city, town and county purposes, (highway taxes excepted) should not exceed $1·50.

We think the words, in the school district act, *in the same manner* &c., do not extend so as to include this restriction as to poll taxes. This restriction, in terms, applies only to taxes levied for town and county purposes ; it does not fix the proportion for a single tax, but only fixes a maximum to all poll taxes on an individual, for a single year. But the consideration which we deem most decisive is, that the contemplated town tax is an annual tax, whereas the school district tax occurs but seldom, most commonly for building a schoolhouse, an occasion likely to occur only at long intervals. It may be very reasonable to provide, that the whole of one's poll taxes for a year, shall not exceed a given sum ; and quite otherwise, where such tax is to occur once only in twenty or thirty years, and must then require a tax, in the aggregate, large. We think therefore that this limitation of the whole amount of one's poll tax, for one year, cannot apply to an occasional school district tax, not in its nature annual.

But without considering all these objections in detail, we think there is one, which shows the assessment to be illegal and void ; that it goes to the merits of the case, and is decisive. It is necessary to look carefully at the objects and purposes of this statute, providing for the instruction of youth, *St.* 1826,

c. 143, in order correctly to understand and expound its various provisions.

Towns are authorized to determine and define the limits of school districts ; *St.* 1789, *c.* 19, § 2 ; and this must be done, by local limits. *Withington* v. *Eveleth*, 7 Pick. 106. They thus become *quasi* territorial corporations. As such they are empowered by *St.* 1826, *c.* 143, § 10, to raise money for erecting or repairing a schoolhouse in their respective districts, or to purchase or hire any house or building to be used as a schoolhouse, and also to purchase land for a schoolhouse to stand upon, and for the accommodation of the same ; also, to raise money to procure necessary utensils, for the respective schoolhouses. This is the extent of their powers of raising money. And from this view of the occasions for the exercise of this power, it is very obvious that it may sometimes happen, that a heavy tax is necessary to rebuild a schoolhouse and furnish it, in a particular district, and no further tax may become necessary for many years.

It is further to be considered, that this duty of supporting and maintaining schools is still recognised as a municipal duty, charged upon towns in their corporate capacity ; that the expense for supporting schools and providing instructors, is still the duty of towns and not of school districts ; and that the sole purpose of the district organization is, to provide and furnish schoolhouses. And even by the proviso of § 2, it is left optional with towns thus to divide their territory into districts, for building schoolhouses, or to carry the whole system into execution, in their own corporate capacity, without the intervention of districts. The whole duty being a charge upon the town, it is right that the expense of building schoolhouses, as well as the other charges incident to the system of education in common schools, should, as far as practicable, be supported by an equal tax upon the polls and property of the town. The statute directing the mode of taxation, § 11, seems specially designed to promote that object. In many cases, it is obvious that a tax upon all the property of non-residents, in the districts in which it lies, would be very unequal in its operation upon the several districts. It is a question of equality among the districts. It would in general be wholly immaterial to the

non-resident owner, in which district his estate is taxed, if not taxed unequally. The non-resident property, as a source of taxation, is a fund belonging, not to the district, but to the town.

It is with a view to this purpose of taxation, and this condition of the taxable property, within the town, that the stat-. ute, in the section cited, § 11, provides, " that lands where the owner thereof lives without the town, shall be taxed in such district as the assessors, having regard to the local situation thereof, shall appoint ; and it shall be the duty of the assessors, before they assess a tax for any district, to determine in which district such lands respectively shall be taxed, and to certify in writing their determination to the clerk of the town, who shall record the same ; and such land, while owned by any person residing without the limits of the town, shall be taxed in such districts, until the town shall be districted anew."

It appears to the Court, that this is a most important provision, a strict compliance with which is essential to an equal taxation. This previous distribution of the districts, and a permanent record of it, are necessary to the rights of all parties. When once made by the board of assessors, it becomes permanent and binding upon their successors. They cannot alter it. It is as important to the tax-paying inhabitants of the district, as to the non-resident owners. Without it, property might not only be liable to taxation in different districts, in different years, and thus be over-taxed,. for building schoolhouses, but it might escape taxation for this object altogether, to the injury of the resident inhabitants. The filing of the certificate is necessary, not only as a security to the owner against over-taxation, and as a security to the several districts, that each shall have the benefit of its due proportion of the taxes on non-resident property ; but as all town officers are annual, and changing from year to year, such certificate is necessary for the future information and · government of the town and its officers.

It seems analogous to the case where a copy of the assessment of town taxes, and a copy of the invoice and valuation, have not been lodged in the office of the town clerk, as required by

statute, in which case it is held that the assessment is illegal; and a sale of land made to enforce it, is void. *Blossom* v. *Cannon*, 14 Mass. R. 177. So where a copy of the valuation has not been left with the town clerk, or filed in the assessors' office, before the warrant for assessing the taxes was committed to the constable, as required by statute, it is held, that the tax is not valid. *Thayer* v. *Stearns*, 1 Pick. 482.

In the present case, it did not appear, nor was it suggested in the argument, that the assessors had determined in writing, and certified to the town clerk, or caused the same to be recorded in the town clerk's office, in what school districts in the town, the lands of non-resident owners respectively should be taxed, before they proceeded to assess the tax ; nor, that any such determination had been made and recorded by any previous board of assessors in said town ; nor was it denied that there were such lands within the town.

This, we think, is decisive against the validity of the tax now under consideration ; and it therefore does not justify the arrest made to enforce it.

It is to be considered, that the provision requiring such distribution of non-resident property among school districts, and when once made, rendering it permanent, until the town shall be districted anew, was not a new provision in the *St.* 1826, *c.* 143, but a re-enactment in terms of a like provision in *St.* 1799, *c.* 66, § 2, which was repealed by that of 1826, *c.* 143. [And see Revised Stat. *c.* 23, § 35.]

It was contended in argument, that as it did in fact appear, that the assessors included some and omitted other non-resident property, it is to be inferred, that they made a distribution before assessing the tax. Probably they did ; but not in such form as to meet the exigencies of the statute. The law looks not only at the particular tax, but to the taxes in other districts and in future years as long as the districts remain, to be equalized and adjusted by such a settled and permanent distribution.

It was further contended, that the written certificate of such distribution made by the assessors, and recorded, was designed solely for the security of non-resident proprietors against double taxation, and therefore the want of it is a defect, of which the

plaintiff cannot avail himself. But we are of opinion, for the reasons stated, that this is too limited a view of this express requisition ; that as it may in various ways operate so as to benefit and secure all the parties, all have an interest in insisting upon a compliance with it. A remark of the Court in *Blossom* v. *Cannon*, 14 Mass. R. 177, which was upon a question of title, under a collector's sale, strongly applies to this case ; they say, " that the returning of the valuation and a copy of the assessment to the town clerk being a salutary and necessary regulation, essential to the citizens in general, can, in no case, be dispensed with."

This point being decisive against the validity of this assessment, the defendants have not maintained their justification, and consequently there must be

*Judgment on the verdict.*